<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1962**

BESSIE MILLER,

              Plaintiff - Appellant,

        v.

BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS; KEVIN
SEAWRIGHT, Special Assistant to the COO Baltimore City
Public Schools System; JEROME JONES, Labor Relations
Associate Baltimore City Public School System,

              Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District
Judge.  (1:10-cv-02038-WDQ)

Submitted: March 31, 2014          Decided: April 10, 2014

Before NIEMEYER and THACKER, Circuit Judges, and DAVIS, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

John H. Morris, Jr., Baltimore, Maryland, for Appellant.  Edmund
J. O'Meally, PESSIN KATZ LAW, P.A., Towson, Maryland, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Bessie Miller appeals the district court's grant of summary judgment on her claim that the Baltimore City Board of School Commissioners ("the Board") and its representatives violated her due process rights by coercing her retirement from her position as a school cafeteria manager. We affirm.

We review de novo a district court's order granting summary judgment, Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011), taking the facts in the light most favorable to Miller. Scott v. Harris, 550 U.S. 372, 380 (2007). In order to proceed on her due process claim, Miller was required to produce sufficient evidence "that [she] has a constitutionally protected 'liberty' or 'property' interest, and that [she] has been 'deprived' of that protected interest by some form of 'state action'[.]" Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (internal citation omitted). Although the parties do not dispute that Miller had a protected interest in her continued employment, Miller contends that the Board coerced her relinquishment of that interest by placing her on suspension without pay.

As we have explained, "[i]f [an employee] resign[s] of [her] own free will even though prompted to do so by events set in motion by [her] employer, [she] relinquished [her] property interest voluntarily and thus cannot establish that the state

2

'deprived' [her] of it within the meaning of the due process clause." Id. at 173. However, "[a] public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary resignations." Id. (internal quotation marks omitted). Accordingly, where an employee's purported "resignation was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause." Id. (internal quotation marks omitted). Generally, we have found resignations involuntary "where forced by . . . duress or coercion." Id. at 174. Thus, we must examine whether the Board's conduct deprived Miller of "a free and informed choice" regarding her retirement. Id. (discussing factors courts consider in making this objective determination).

The common thrust of Miller's arguments on appeal is that the facts of her case are distinguishable from those we examined in Stone. To that end, Miller first notes that, unlike the plaintiff in Stone, she is not a sophisticated, well-educated employee with considerable experience and seniority. However, Miller fails to appreciate that, also unlike in Stone, she was not rushed to accept the Board's offer of a demotion, and she had, at all pertinent times, the aid of her union representative or counsel. Accordingly, as in Stone, there is

no concern that Miller either misunderstood her rights or was not granted an ample opportunity to discover them. Miller has never argued to the contrary, and, moreover, Miller was able to choose retirement, an option not even offered by the Board. See id. at 177-78.

Next, Miller suggests that the Board lacked good cause to threaten her with termination, especially in light of the purported admission of a Board representative that he knew Miller had taken no money. Miller does not dispute, however, that the Board had sufficient evidence to accuse her of failing to comply with proper money handling procedures, regardless of whether she in fact misappropriated funds. Nor does Miller claim on appeal that her alleged mismanagement of cafeteria funds was insufficient to warrant her demotion or termination. See id. at 177.

Finally, Miller asserts that her retirement was involuntary because, despite her request for further discussions regarding possible retaliation, the Board remained idle and stranded her in the financially untenable position of suspension without pay. Thus, Miller contends that the circumstances motivating her choice to retire were appreciably more coercive than those we examined in Stone. See id. at 170-71. Contrary to Miller's suggestion that the voluntariness of an employee's decision when facing the threat of termination turns on whether

4

the employee had the option of participating in some form of disciplinary process, we have explicitly cautioned against analyzing the willfulness of an employee's actions in terms of a "waiver" of the process the employee might have otherwise received or been due. Id. at 173 n.7. Instead, "the proper analysis . . . recognize[s] that the public employee who resigns voluntarily has no procedural rights to waive because [she] has suffered no deprivation at the hands of the state." Id. Accordingly, we conclude that the Board's offer of a choice between demotion or termination was not coercive.[*] See Shealy v. Winston, 929 F.2d 1009, 1011-13 (4th Cir. 1991) (finding retirement voluntary where employee was offered choice of retirement or demotion in rank).

Accordingly, because Miller, with a full understanding of her options, voluntarily chose to retire, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented

---

[*] Although Miller also cites the Board's failure to respond to her invitation to discuss whether the allegations against her might be motivated by her recent worker's compensation claim as further evidence of coercion, Miller improvidently assumes that the Board was obliged to entertain or grant her request. Because the majority of Miller's suspension without pay was precipitated by her ultimately ill-advised decision to attempt to engage the Board in negotiations it had no obligation to undertake, there was no coercion on the Board's part.

in the materials before this court and argument would not aid the decisional process.

AFFIRMED